JUDGE OETKEN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
14x CV    7398
-------------------------------------------------------------X
PASQUALE PICARO, PRUDENCIO VALLE,
JUDITH BRATNICK, SANDY CAUSE,
individually and as next friend to minor child S.C.,
and LETITIA JAMES, as Public Advocate for
the City of New York,

        Plaintiffs,

        -against-

PELHAM 1135 LLC, PELHAM 1130 LLC,
MATTHEWS 2160 LLC, JOSHUA GOLDFARB,
PHILIP GOLDFARB, MARC GOLDFARB,
THOMAS FRYE, GOLDFARB PROPERTIES
INC., PELICAN MANAGEMENT INC.,
NEW YORK CITY DEPARTMENT OF
BUILDINGS, and RICK D. CHANDLER,
as Commissioner of the New York City
Department of Buildings,

        Defendants.
-------------------------------------------------------------X

**COMPLAINT**

14-Civ. _____

RECEIVED
SEP 12 2014
U.S.D.C. S.D. N.Y.
CASHIERS

## PRELIMINARY STATEMENT

1.     This action for injunctive and declaratory relief seeks to protect mobility-impaired tenants' right of egress and ingress to their apartments during the rehabilitation of their 6-story building's sole elevator. Tenant Plaintiffs who reside at 1135 Pelham Parkway North are unable or limited in their ability to use stairs because of their disabilities: Pasquale Picaro suffers from severe respiratory problems resulting from his work as a 9/11 first responder and Prudencio Valle suffers from advanced dementia and uses a wheelchair or a walker to ambulate. Landlord Defendants have notified the Tenant Plaintiffs of their intention to take the elevator out of service at the premises on September 15, 2014 for a period of five months, effectively trapping named Plaintiffs in their homes. Landlord Defendants have only entertained vague

accommodations which would require that these tenants vacate their homes to less desirable and less convenient apartments, and have not agreed to accommodations which allow these tenants to remain safely and comfortably in their apartments.

2.     Plaintiff Tenants have suffered similarly at other buildings in which Landlord Defendants removed the elevators from service. At 1130 Pelham Parkway South and 2160 Matthews Avenue, also located in the Pelham Parkway neighborhood of the Bronx, the elevators were out of service during the spring and summer of 2014. Judith Bratnick, resident at 2160 Matthews Avenue, suffers from myotonic muscular dystrophy, type 2. S.C., baby son of Sandy Cause, is currently undergoing chemotherapy due to bilateral retinoblastoma, or cancer of the eye. Although each requested a reasonable accommodation, each was denied by Landlord Defendants. As a result of Landlord Defendants' actions, these two Tenant Plaintiffs were severely inconvenienced, were placed in danger, and suffered damages due to the lack of elevator service in their buildings.

3.     By failing to ensure access to their apartments, common areas, and other facilities within the premises, and failing to offer reasonable accommodations, Landlord Defendants have violated Tenant Plaintiffs' rights under Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act (hereinafter "FHA"), as amended by the Fair Housing Amendments Act of 1988 (hereinafter "FHAA"), 42 U.S.C. § 3601 et seq.; the regulations promulgated thereunder, 24 C.F.R. § 100 et seq.; the New York State Human Rights Law, N.Y. Exec. L. § 290 et seq. (hereinafter "State HRL"); the regulations promulgated thereunder, 9 N.Y.C.R.R., Part 465 et seq.; the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. (hereinafter "City HRL"); and the regulations promulgated thereunder.

4. Further, the elevator work proposed by the Landlord Defendants requires a permit from the Department of Buildings. NYC Admin. Code § 28-105.2. The Department of Buildings is responsible for enforcing the City's Building Code, NYC Charter § 643, NYC Admin. Code § 28-103.1, including the City's handicapped accessibility laws codified at Chapter 1, Subchapter 4 of the Building Code. Upon information and belief, based upon a review of the Department of Buildings website as of September 11, 2014, Landlord Defendants have not received a permit to perform elevator work at 1135 Pelham Parkway North in the Bronx.

5. Notably, NYC Admin. Code §§ 27-292.1 and 27-292.4(b)(2), require that "buildings shall be provided with accessible routes, usable or adaptable space and accessible elements and facilities to make buildings accessible and usable by, and to establish a safe environment for, all categories of people having physical disabilities"; NYC Admin. Code § 27-292.5(a), requiring that "primary entrance(s) for buildings shall be accessible"; NYC Admin. Code § 27-292.5(d), requiring that "[t]he path of travel in exterior and interior accessible routes shall provide unobstructed safe access..."; and NYC Admin. Code § 27-292.5(c), addressing interior accessibility for disabled persons from entrances to areas including but not limited to laundry rooms, refuse disposal locations, and mailbox areas, among others.

6. Upon information and belief, the Department of Buildings does not have a protocol for ensuring that mobility impaired tenants' right of access is protected during protracted elevator repairs. Or, in the event the Department of Buildings does employ such a protocol, upon information and belief it was not followed in relation to overseeing elevator work at 1135 Pelham Parkway North, 1130 Pelham Parkway South, 2160 Matthews Avenue, and 1540 Pelham Parkway South in the Bronx. The Governmental Defendants' failure to ensure compliance with accessibility laws is a violation of Title II of the Americans with Disabilities

Act; 42 U.S.C. § 12131, et seq. ("ADA"); the regulations promulgated thereunder; 28 C.F.R., Part 35.

## JURISDICTION AND VENUE

7.    This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States; 28 U.S.C. § 1343 for actions under laws providing for the protection of civil rights; and 28 U.S.C. § 1367 for related state and local claims.

8.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b). The Southern District of New York is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. All Plaintiffs reside in the Southern District.

## PARTIES

9.    Plaintiff PASQUALE PICARO is a mobility-impaired tenant who resides alone at 1135 Pelham Parkway North, Apartment 5F. He receives a fixed income, and has resided in this apartment for 6 years. He suffers from severe respiratory problems, including asthma, as a result of his work as a 9/11 first responder; he also recently fell and broke his tibia, and his ankle still has not healed properly. He is unable to walk more than a block at a time, and cannot walk up and down flights of stairs. If Landlord Defendants proceed with plans to remove the elevator from service, Mr. Picaro's longterm apartment will not be accessible to him.

10.    Plaintiff PRUDENCIO VALLE is a mobility-impaired tenant who resides at 1135 Pelham Parkway North, Apartment 5C. Mr. Valle receives a fixed income from his longtime

service as a firefighter, and has lived in his apartment for nearly 44 years. He suffers from advanced dementia, and chronically low blood pressure, which necessitates his use of a walker or wheelchair to ambulate. Mr. Valle resides alone, but his fulltime home health aide assists in the apartment. If Landlord Defendants proceed with plans to remove the elevator from service, Mr. Valle's longterm apartment will not be accessible to him. Likewise, due to his dementia, it would be incredibly traumatic and disorienting if he were to be forced to move from his current apartment.

11.   Plaintiff JUDITH BRATNICK is a mobility-impaired tenant who resides at 2160 Matthews Avenue, Apartment 7N. She has resided in her apartment 37 years. She suffers from myotonic muscular dystrophy, type 2, and as a result is unable to climb or descend flights of stairs. When the elevator was removed from her building, she was unable to leave the top floor of her building, and became weaker and weaker. She was unable to go to the doctor to seek needed medical treatment due to a broken hand. She requested a reasonable accommodation in the form of a temporary apartment swap with her son. However, she was told by Landlord Defendants that the move would have to be permanent, a denial of her request for an accommodation. As a result, she had to hire a laundry service, have food delivered to her apartment, and had difficulty getting mail.

12.   Plaintiff SANDY CAUSE as next friend to minor child S.C., the baby son of Sandy Cause, resides at 1130 Pelham Parkway South, Apartment 3A. Mr. Cause has resided in the building nearly two years. His son suffers from bilateral retinoblastoma, cancer of the eye, and has many doctor appointments for chemotherapy and associated treatments. While the elevator was out during the spring and summer of 2014, Mr. Cause had to work often, and his girlfriend took their son, S.C., to the doctor. It was very difficult to walk down flights of stairs

with their baby son, the stroller, and their baby bag. When she needed to purchase groceries or other items, it became nearly impossible. Although the Cause family requested a reasonable accommodation, Landlord Defendants stated that the Cause family to leave their stroller – unsecured – in the building lobby. The family endured so much hardship that baby S.C. and his mother moved in with family in another building that has a functional elevator.

13.    Plaintiff LETITIA JAMES is the Public Advocate for the City of New York. In this capacity, the Public Advocate ensures that the city government serves its citizens by providing oversight for city agencies, investigating citizen complaints regarding city services, and making proposals or seeking relief to address perceived shortcomings or failures.

14.    The Public Advocate's Office Constituent Affairs Department was first contacted by a tenant in one of the Landlord Defendants' buildings on July 15, 2014. The tenant complained of disability, source of income, and sexual orientation discrimination, and also described a pattern of commencing baseless proceedings, and performing repairs in a disruptive manner, in order to displace long-term tenants. As a result of the constituent's complaint, the Public Advocate sent representatives to several tenant meetings, conducted a canvas of tenants to determine their concerns, and visited the buildings to inspect conditions.

15.    In an attempt to explore whether the Department of Buildings could prevent the elevators from being taken out of service, the Public Advocate's Office contacted the elevator unit of the Department of Buildings. The advocate was informed that the Department of Buildings' scrutiny of elevator applications for compliance with handicap laws is limited to ensuring notice was provided to the tenants.

16.    PELHAM 1135 LLC is the corporation which is the deed owner of the property known as 1135 Pelham Parkway North, according to the Multiple Dwelling Registration filed

with the New York City Department of Housing Preservation and Development. According to the registration, and according to the New York Department of State, the corporation has designated an address for service at 524 North Avenue, New Rochelle, New York 10801.

17.    PELHAM 1130 LLC is the corporation which is the deed owner of the property known as 1130 Pelham Parkway South, according to the Multiple Dwelling Registration filed with the New York City Department of Housing Preservation and Development. According to the registration, and according to the New York Department of State, the corporation has designated an address for service at 524 North Avenue, New Rochelle, New York 10801.

18.    MATTHEWS 2160 LLC is the corporation which is the deed owner of the property known as 2160 Matthews Avenue, according to the Multiple Dwelling Registration filed with the New York City Department of Housing Preservation and Development. According to the registration, and according to the New York Department of State, the corporation has designated an address for service at 524 North Avenue, New Rochelle, New York 10801.

19.    JOSHUA GOLDFARB is the Building Manager of 1135 Pelham Parkway North, upon information and belief according to a letter received by tenants which requested that tenants contact Mr. Goldfarb in relation to requests for reasonable accommodations. The letter dated August 13, 2014 was on letterhead for Goldfarb Properties which maintains an address at 524 North Avenue, New Rochelle, New York 10801.

20.    PHILIP GOLDFARB is the Head Officer of the corporations known as PELHAM 1135 LLC, PELHAM 1130 LLC, and MATTHEWS 2160 LLC, according to the Multiple Dwelling Registration filed with the New York City Department of Housing Preservation and Development. According to the registration, Mr. Goldfarb maintains an office at 524 North Avenue, New Rochelle, New York 10801. PHILIP GOLDFARB is also the Chief Executive

Officer of GOLDFARB PROPERTIES INC., according to the New York Department of State, which indicates an address at 524 North Avenue, New Rochelle, New York 10801.

21.    MARC GOLDFARB is the Officer of the corporations known as PELHAM 1135 LLC, PELHAM 1130 LLC, and MATTHEWS 2160 LLC, according to the Multiple Dwelling Registration filed with the New York City Department of Housing Preservation and Development. According to the registration, Mr. Goldfarb maintains an office at 524 North Avenue, New Rochelle, New York 10801.

22.    THOMAS FRYE is the Managing Agent of the premises located at 1135 Pelham Parkway North, 1130 Pelham Parkway South, and 2160 Matthews Avenue, Bronx, New York, according to the Multiple Dwelling Registration filed with the New York City Department of Housing Preservation and Development. According to the registration, Mr. Frye maintains an office at 524 North Avenue, New Rochelle, New York 10801.

23.    GOLDFARB PROPERTIES INC. is the entity identified in a letter received by tenants which requested that tenants contact the Building Manager, Joshua Goldfarb. According to a letter dated August 13, 2014, Goldfarb Properties maintains an address at 524 North Avenue, New Rochelle, New York 10801. According to the New York Department of State, PHILIP GOLDFARB is the corporation's Chief Executive Officer. According to the New York Department of State, the corporation has designated an address for service and maintains its Principal Executive Office at 524 North Avenue, New Rochelle, New York 10801.

24.    PELICAN MANAGEMENT INC. is, upon information and belief, the management company employed by Landlord Defendants. According to the New York Department of State, PHILIP GOLDFARB is the corporation's Chief Executive Officer. According to the New York Department of State, the corporation has designated an address for

service and maintains its Principal Executive Office at 524 North Avenue, New Rochelle, New York 10801.

25.     The NEW YORK CITY DEPARTMENT OF BUILDINGS is the agency charged with ensuring the safe and lawful use of buildings and properties in New York City, and in this capacity it enforces and interprets the New York City Building Code, Electrical Code, Zoning Resolution, New York State Labor Law, and New York State Multiple Dwelling Law. The Department reviews and issues certificates of occupancy and building or construction permits. The Department of Buildings maintains its executive office at 280 Broadway, 7th Floor, New York, New York 10007.

26.     RICK D. CHANDLER is the Commissioner of the New York City Department of Buildings, and is sued in his official capacity. Defendant CHANDLER maintains an office at 280 Broadway, 7th Floor, New York, New York 10007.


### STATUTORY AND REGULATORY SCHEME

### Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988

27.     Title VIII of the Civil Rights Act of 1968, also known as the FHA, as amended by the FHAA, 42 U.S.C. § 3603, states that "it shall be unlawful ... [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of - - (A) that person; or . . .(C) any person associated with that person." 42 U.S.C. § 3604 (f)(2).

28.     A person is defined as "handicapped" if she has "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602 (h)(1); see 24 C.F.R. § 100.201. "Major life activities" are functions such as caring for one's self,

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 24 C.F.R. § 100.201(b).

29.  Federal regulations implementing this Act require the dwelling unit to be accessible by the handicapped persons so as to allow them use and enjoyment of all parts of the building, including public and common use areas. See 24 C.F.R. § 100.65(b)(4) and § 100.204.

30.  A dwelling unit is "accessible" with respect to the common and public use areas when these areas can be "approached, entered, and used by individuals with physical handicaps." 24 C.F.R. § 100.201.

31.  "Common use areas" are those rooms, spaces, or elements located inside or outside the building that are available to residents and their guests to use and enjoy. 24 C.F.R. § 100.201. "Public use areas" are those rooms and spaces located inside or outside the building that are "available to the general public." 24 C.F.R. § 100.201.

## The Americans with Disabilities Act

32.  Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq. states that "no qualified individual with a disability shall, by reason of such disability, be … denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132.

33.  Under the ADA, the term "disability" is defined as:

   (i)  a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

   (ii)  a record of such an impairment; or

   (iii)  being regarded as having such an impairment.

42 U.S.C. § 12102.

34.    A "public entity" is defined as "any department, agency, ... or other instrumentality of a State or States or local government ..." 42 U.S.C. § 12131.

35.    ADA Title II regulations require that all public entities "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individual with disabilities." 28 C.F.R. § 35.150(a).

36.    28 C.F.R. § 35.130(b)(1) prohibits public entities from:

(i)    Deny[ing] a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

(ii)    Afford[ing] a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii)    Provid[ing] a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

. . .

(iv)    Otherwise limit[ing] a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

### New York State Human Rights Law

37.    The New York State Human Rights Law ("HRL"), N.Y. Exec. Law § 290 et seq. provides, in pertinent part, that:

(iv)    It shall be unlawful discriminatory practice for the owner, . . . or managing agent of . . . a housing accommodation . . . or any agent or employee thereof:

. . .

(v)    (2) To discriminate against any person because of . . . disability . . . in terms, conditions or privileges of sale,

> rental or lease of any such housing accommodation or in the furnishing of facilities or services on connection therewith.

N.Y. Exec. Law § 296(5).

38.     The State HRL also provides that:

> It shall be an unlawful discriminatory practice for the owner . . . or managing agent of . . . housing accommodations . . . to refuse to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling . . .

N.Y. Exec. Law § 296 (18)(2).

39.     Under the State HRL, the term "disability" is defined as:

> (a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques, or (b) a record of such impairment or (c) a condition regarded by others as such an impairment . . .

N.Y. Exec. Law § 292 (21).

40.     The State HRL defines "housing accommodation" as "any building, structure, or portion thereof which is used or occupied . . . as the home, residence or sleeping place of one or more human beings." N.Y. Exec. Law § 292 (10).


## The New York City Human Rights Law

41.     The New York City Human Rights Law ("City HRL"), N.Y.C. Admin. Code § 8-101 et seq., affords protection against discrimination in housing to disabled individuals.

42.     The City HRL provides, in relevant part:

> (a) It shall be unlawful discriminatory practice for the owner . . . or managing agent of . . . a housing accommodation, constructed or to be constructed, or any agent or employee thereof:

. . .

(2) To discriminate against any person because of such person's actual or perceived . . . disability . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation . . . or in the furnishing of facilities or services in connection therewith.

N.Y.C. Admin. Code § 8-107 (5).

43.   The City HRL defines "housing accommodation" as "any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings." N.Y.C. Admin. Code § 8-102 (10). The City HRL defines "physical, medical, mental or psychological impairment" in the following manner:

(1) an impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system; or

(2) a mental or psychological impairment.

N.Y.C. Admin Code § 8-102 (16) (b)

## The New York City Building Code

44.   The New York City Building Code, codified in Titles 27 and 28 of the New York City Administrative Code, applies to the "construction, alteration, movement, addition, replacement, repair, equipment, use and occupancy, location, maintenance, removal and demolition of every building or structure." NYC Admin. Code § 28-701.2C1.

45.   The Building Code was enacted "to provide reasonable minimum requirements and standards…for the regulation of building construction in the City of New York in the interest

of public safety, health, welfare and the environment, and with due regard for building construction and maintenance costs." NYC Admin. Code § 28-101.2.

46.     Comprehensive in scope, the Building Code incorporates and applies the provisions of the New York City Fire Code to "[e]mergency preparedness and planning, including the orderly evacuation of occupants of a building, structure or premises in the event of fire, explosion, biological, chemical or hazardous material incident or release, natural disaster or other emergency, or the threat thereof". NYC Admin. Code § 28-701.2C1.

47.     The Commissioner of the New York City Department of Buildings is charged with enforcing the provisions of the New York City Building Code. NYC Admin. Code § 28-103.1. In line with these duties, the Department of Buildings shall review and issue permits, where appropriate, in accordance with the provisions of the Building Code. NYC Admin. Code § 28-103.11.

48.     Pursuant to Section 105.2 of the Building Code, a building owner must receive a permit prior to altering or repairing a mechanical system. NYC Admin. Code § 28-105.1. Chapter 2 of the Building Code establishes a penalty of no less than five thousand dollars ($5,000) for performing work without a permit issued by the Department of Buildings. NYC Admin. Code § 28-213.1.2.

49.     Chapter 1, Subchapter 4 of the Building Code sets forth various "Building Limitations" on property owners, including certain requirements pertaining to building access for those with disabilities, contained in Article 2. Section 27-292 establishes that "buildings shall be provided with accessible routes, usable or adaptable space and accessible elements and facilities to make buildings accessible and usable by, and to establish a safe environment for, all categories of people having physical disabilities." NYC Admin. Code § 27-292.1.

50.     Article 2 explicitly states that the provisions "shall be supplemental to and take precedence over" other less restrictive code sections, including means of egress and building access, otherwise contained at NYC Admin. Code § 27-357(d). NYC Admin. Code § 27-292.4(b)(2).

51.     Expanding on building access for those with disabilities, the Code provides that "primary entrance(s) for buildings shall be accessible". NYC Admin. Code § 27-292.5(a).

52.     Crucially, "[t]he path of travel in exterior and interior accessible routes shall provide unobstructed safe access…" NYC Admin. Code § 27-292.5(d).

53.     The Building Code also specifically addresses interior accessibility for disabled persons from entrances to areas including but not limited to laundry rooms, refuse disposal locations, and mailbox areas, among others. NYC Admin. Code § 27-292.5(c).

## STATEMENT OF FACTS

54.     The premises that are the subject of these proceedings, 1135 Pelham Parkway North, 1130 Pelham Parkway South, and 2160 Matthews Avenue, Bronx, New York, was purchased by their constituent corporations on January 31, 2014. The LLC is run by the Goldfarb family. The previous owners were corporate entities controlled by Lloyd and Bernard Putter. The Putters also sold 1540 Pelham Parkway South to Landlord Defendants at or around the same time.

55.     The premises at 1135 Pelham Parkway North is a 6-story multiple dwelling apartment building with 52 apartment units, many of which are occupied by low-income or disabled tenants.

56.     The landlord and owner of the premises, Landlord Defendants, have indicated an intention to install a new elevator in the building, a process that purports to remove the elevator from operation for a period of five months during the fall and winter months, commencing September 15, 2014.

57.     Landlord Defendants have known that the Disabled Tenants reside in the premises.  However, Landlord Defendants have not taken appropriate steps to provide, maintain, or modify services in preparation or execution of the renovations. Landlord Defendants also have not ensured that the disabled tenants will have access to internal building services, or egress in the event of emergency, during the term of the renovations.

58.     Tenant Plaintiffs have also requested that Landlord Defendants postpone the proposed removal of elevator service to ensure a reasonable accommodation can be agreed upon between the parties. However, Landlord Defendants have not responded to this request.

59.     Landlord Defendants or their associates recently took similar action at the apartment buildings located in the Bronx at 2160 Matthews Avenue, 1130 Pelham Parkway South, and 1540 Pelham Parkway South.

60.     The premises at 1130 Pelham Parkway South is a 6-story multiple dwelling apartment building with 55 apartment units, many of which are occupied by low-income or disabled tenants.

61.     The premises at 2160 Matthews Avenue is a 6-story multiple dwelling apartment building with 133 apartment units, many of which are occupied by low-income or disabled tenants.

62.     Tenants in those buildings, including elderly and disabled individuals, endured months without use of the elevators, which exacerbated various health conditions, including

emphysema, asthma, high blood pressure, trouble breathing, knee and leg surgeries, back injuries, kidney disease, and liver disease.

63. Each individual Tenant Plaintiff is disabled – suffering from health problems and mobility impairments – which make it extremely difficult if not impossible to climb or descend stairs. Without elevator service, Tenant Plaintiffs must use the stairs to travel to and from their apartments, or they must remain inside their apartment for five (5) months. In the event of an emergency, without requested accommodations, these tenants will be unable to vacate the premises.

64. Tenant Plaintiffs at 1130 Pelham Parkway South and 2160 Matthews Avenue requested reasonable accommodations, which were denied by Landlord Defendants.

65. Tenant Plaintiffs at 1135 Pelham Parkway North have asked Landlord Defendants to provide reasonable accommodations to the tenants in the form of various services to transport tenants, or necessary items – including food, medical equipment, mail, and laundry – up or down the stairs during the term of the construction. However, Landlord Defendants have not offered any accommodation other than vague offers to move tenants to apartments in different buildings which may not be comparable, or may be less desirable to the Tenant Plaintiffs.

66. Upon information and belief, Landlord Defendants have not received a permit from the New York City Department of Buildings to perform elevator work at the premises, as is required pursuant to NYC Admin. Code § 28-105.2.

67. Meanwhile, in an attempt to explore the permit application process and whether the Department of Buildings could prevent the elevators from being taken out of service, the Public Advocate's Office contacted the elevator unit of the Department of Buildings. The advocate was informed that the Department of Buildings' scrutiny of elevator applications for

compliance with handicap laws is limited to ensuring notice was provided to the tenants.

## Tenant Plaintiffs

### Pasquale Picaro

68.     Plaintiff PASQUALE PICARO is a mobility-impaired tenant who resides alone at 1135 Pelham Parkway North, Apartment 5F.

69.     He has resided in this apartment for 6 years.

70.     Mr. Picaro previously worked for many years as an electrician with Local 3 International Brotherhood of Electrical Workers, and now receives a fixed monthly pension.

71.     Mr. Picaro suffers from severe respiratory problems, including asthma, as a result of his work as a 9/11 first responder. Mr. Picaro also recently fell and broke his tibia, and his ankle still has not healed properly.

72.     As a result of his disabilities, he is unable to walk more than a block at a time, and cannot walk up and down flights of stairs.

73.     If the elevator is not working in the building apartment, he will be unable to leave his apartment building to go shopping for food, to do laundry, to get his mail, or to go to the doctor. I will basically have to stay in my apartment for the entire time.

74.     Mr. Picaro also expresses concern that he may not be able to receive packages at his apartment, because the post office will not climb the stairs to his apartment. As a result, it is likely that he would be unable to receive necessary medical services, including the liquid which he uses in his inhaler and breathing machine.

75.     Mr. Picaro has requested services that address these concerns, to alleviate the burden of the proposed work, and to lessen any danger to Mr. Picaro. However, he has not

received a response as to whether Landlord Defendants will provide such an accommodation.

76. Without a response regarding those services, if Landlord Defendants proceed with plans to remove the elevator from service, Mr. Picaro's longterm apartment will not be accessible to him.

**Prudencio Valle**

77. Plaintiff PRUDENCIO VALLE is a mobility-impaired tenant who resides at 1135 Pelham Parkway North, Apartment 5C.

78. Mr. Valle receives a fixed income from his longtime service as a firefighter, and has lived in his apartment for nearly 44 years.

79. He suffers from advanced dementia, and chronically low blood pressure, which necessitates his use of a walker or wheelchair to ambulate. Mr. Valle resides alone, but his fulltime home health aide assists in the apartment.

80. Due to his advanced dementia, Mr. Valle has granted power of attorney to Theresa Sammarco, a longtime family friend.

81. Mr. Valle, Ms. Sammarco, and Mr. Valle's home health aide have all indicated that due to the dementia, Mr. Valle would be distressed, disoriented, and traumatized if he were forced to leave his apartment.

82. Mr. Picaro has requested services that address his concerns regarding his mobility, medical access, receipt of mail, delivery of food, and laundry, in addition to potential emergency assistance.

83. However, he has not received a response as to whether Landlord Defendants will provide such an accommodation.

84.    Without a response regarding those services, if Landlord Defendants proceed with plans to remove the elevator from service, Mr. Valle's longterm apartment will not be accessible to him.

85.    If Landlord Defendants proceed with plans to remove the elevator from service, Mr. Valle's longterm apartment will not be accessible to him. Likewise, due to his dementia, it would be incredibly traumatic and disorienting if he were to be forced to move from his current apartment.

**Judith Bratnick**

86.    Plaintiff JUDITH BRATNICK is a mobility-impaired tenant who resides at 2160 Matthews Avenue, Apartment 7N.

87.    She has resided in her apartment 37 years.

88.    Ms. Bratnick has a PhD and a Masters degree in Public Health, and works as a healthcare consultant.

89.    She suffers from myotonic muscular dystrophy, type 2, and as a result is unable to climb or descend flights of stairs.

90.    Ms. Bratnick was notified that her building's elevator would be out of service, and as a result, she requested a reasonable accommodation in the form of a temporary apartment swap with her son. She was told that the move would have to be permanent, and her accommodation request was denied.

91.    When the elevator was removed from her building, she was unable to leave the top floor of her building, and became weaker and weaker. She was unable to go to the doctor to seek needed medical treatment due to a broken hand.

92.     As a result, she also had to hire a laundry service, have food delivered to her apartment, and had difficulty getting mail.

**Sandy Cause**

93.     Plaintiff SANDY CAUSE, as next friend to minor child S.C., the baby son of Sandy Cause, resides at 1130 Pelham Parkway South, Apartment 3A.

94.     Mr. Cause has resided in the building nearly two years.

95.     The family received Supplemental Security Income ("SSI") for their disabled son, as well as employment income for Mr. Cause.

96.     His son suffers from bilateral retinoblastoma, cancer of the eyes, and has many doctor appointments for chemotherapy and associated treatments at Cornell Medical Center in Manhattan.

97.     While the elevator was out during the spring and summer of 2014, Mr. Cause had to work often, and his girlfriend took their son, S.C., to the medical appointments. It was very difficult to walk down flights of stairs with their baby son, the stroller, and their baby bag. When she or Mr. Cause needed to purchase groceries or other items, it became nearly impossible. Exacerbating the issue were many construction workers who were also using the stairs.

98.     Although the Cause family requested a reasonable accommodation, Landlord Defendants stated that the Cause family to leave their stroller – unsecured – in the building lobby.

99.     The family endured so much hardship that baby S.C. and his mother moved in with family in another building that has a functional elevator.

**Landlord Defendants**

100.   Landlord Defendants PELHAM 1135 LLC, JOSHUA GOLDFARB, PHILIP GOLDFARB, MARC GOLDFARB, THOMAS FRYE, GOLDFARB PROPERTIES INC., PELICAN MANAGEMENT INC. constitute the various entities or individuals who own, co-own, or otherwise manage the properties known as 1135 Pelham Parkway South, 2160 Matthews Avenue, 1130 Pelham Parkway South, and 1540 Pelham Parkway South in the Bronx.

101.   Landlord Defendants have proposed to remove the sole elevator from service at 1135 Pelham Parkway South in the Bronx. Plaintiffs Pasquale Picaro and Prudencio Valle reside in these premises.

102.   The Plaintiffs have requested reasonable accommodations from Landlord Defendants, but have not received an assurance that such accommodations will be provided.

103.   Landlord Defendants or their associates recently took similar action at the apartment buildings located in the Bronx at 2160 Matthews Avenue, 1130 Pelham Parkway South, and 1540 Pelham Parkway South. Tenants in those buildings, including elderly and disabled individuals, endured months without use of the elevators, which exacerbated various health conditions, including emphysema, asthma, high blood pressure, trouble breathing, knee and leg surgeries, back injuries, kidney disease, and liver disease.

## CAUSES OF ACTION

**First Cause of Action:  Violations of Title VIII of the Civil Rights Act of 1968**
(Plaintiffs Picaro, Valle, Bratnick and Cause against Landlord Defendants)

104.   Plaintiffs reallege and incorporate by reference the allegations set forth in this Complaint as if fully set forth herein.

105. If Landlord Defendants are allowed to remove elevators from service as planned at 1135 Pelham Parkway North, Bronx, New York, they will discriminate against Plaintiffs on the basis of disability in the provision of services or facilities in connection with Plaintiffs' dwelling in violation of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 42 U.S.C. § 3603 et seq.

106. If elevators are removed from service as planned at 1135 Pelham Parkway North, Bronx, New York, Plaintiffs will be harmed by Defendants' violations of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988.

107. In the buildings where the elevators were already removed from service, 2160 Matthews Avenue, 1130 Pelham Parkway South, and 1540 Pelham Parkway South, Plaintiffs Bratnick and Cause have suffered discrimination on the basis of disability in the provision of services or facilities in connection with Plaintiffs' dwelling in violation of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 42 U.S.C. § 3603 et seq.

108. In the buildings where the elevators were already removed from service, 2160 Matthews Avenue, 1130 Pelham Parkway South, and 1540 Pelham Parkway South, Plaintiffs Bratnick and Cause have been harmed by Defendants' violations of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988.

### Second Cause of Action: Violations of New York State Human Rights Law
(Plaintiffs Picaro and Valle against Landlord Defendants)

109. Plaintiffs reallege and incorporate by reference the allegations set forth in this Complaint as if fully set forth herein.

110. If Defendants are allowed to remove elevators from service at 1135 Pelham Parkway North, Bronx, New York as planned, they will discriminate against Plaintiffs on the

basis of disability in the furnishing of facilities or services in connection with housing accommodations in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

111.   If elevators are removed from service as planned at 1135 Pelham Parkway North, Bronx, New York, Plaintiffs will be harmed by Defendants' violations of the New York State Human Rights Law.

112.   In the buildings where the elevators were already removed from service, 2160 Matthews Avenue, 1130 Pelham Parkway South, and 1540 Pelham Parkway South, Plaintiffs Bratnick and Cause have suffered discrimination on the basis of disability in the furnishing of facilities or services in connection with housing accommodations in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

113.   In the buildings where the elevators were already removed from service, 2160 Matthews Avenue, 1130 Pelham Parkway South, and 1540 Pelham Parkway South, Plaintiffs Bratnick and Cause have been harmed by Defendants' violations of the New York State Human Rights Law.

### Third Cause of Action: Violations of New York City Human Rights Law
(Plaintiffs Picaro, Valle, Bratnick, and Cause against Landlord Defendants)

114.   Plaintiffs reallege and incorporate by reference the allegations set forth in this Complaint as if fully set forth herein.

115.   If Defendants are allowed to remove elevators from service at 1135 Pelham Parkway North, Bronx, New York, as planned, they will discriminate against Plaintiffs on the basis of an actual or perceived disability in the furnishing of facilities or services in connection with housing accommodations in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.

116. In the buildings where the elevators were already removed from service, 2160 Matthews Avenue, 1130 Pelham Parkway South, and 1540 Pelham Parkway South, Plaintiffs Bratnick and Cause have suffered discrimination on the basis of disability in the furnishing of facilities or services in connection with housing accommodations in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.

117. In the buildings where the elevators were already removed from service, 2160 Matthews Avenue, 1130 Pelham Parkway South, and 1540 Pelham Parkway South, Plaintiffs Bratnick and Cause have been harmed by Defendants' violations of the New York City Human Rights Law.

118. If elevators are removed from service as planned at 1135 Pelham Parkway North, Bronx, New York, Plaintiffs will be harmed by Defendants' violations of the New York City Human Rights Law.

**Fourth Cause of Action: Violations of Title II of the Americans with Disabilities Act**
(Plaintiffs Picaro, Valle, Bratnick, Cause, and James against
Defendants Chandler and NYC Department of Buildings)

119. Plaintiffs reallege and incorporate by reference the allegations set forth in this Complaint as if fully set forth herein.

120. The New York City Department of Buildings is a "public entity" as defined in 42 U.S.C. § 12131(1)(b).

121. Plaintiffs Picaro and Valle are "qualified individual[s] with a disability" as defined in 42 U.S.C. § 12131(2).

122. Plaintiff James is a "person aggrieved" by the Department of Building's actions or failure to act, as that term is defined in 29 U.S.C. § 794a(a)(2), made applicable by 42 U.S.C. § 12133.

123. Defendants Chandler and NYC Department of Buildings are responsible for ensuring the enforcement of NYC's Building Code, including elevator permit applications and NYC's accessibility laws. NYC Charter § 643, NYC Admin. Code § 28-103.1.

124. Defendants' failure to apply New York City's accessibility standards to elevator permit applications deprives or has deprived Tenant Plaintiffs of the benefit of NYC's accessibility laws in violation of 28 C.F.R. § 35.130(b)(1).

125. Plaintiffs have been and continue to be harmed by Defendants' violations of Title II of the Americans with Disabilities Act.

### Fifth Cause of Action: Violation of the New York City Building Code
(Plaintiff James against Defendants Chandler and NYC Department of Buildings)

126. Plaintiffs reallege and incorporate by reference the allegations set forth in this Complaint as if fully set forth herein.

127. Under the New York City Charter, Plaintiff James is charged with receiving, investigating, and attempting to resolve complaints regarding the operation of City agencies. NYC Charter § 24(f).

128. Defendants Chandler and NYC Department of Buildings are responsible for ensuring the enforcement of NYC's Building Code, including elevator permit applications and NYC's accessibility laws. NYC Charter § 643, NYC Admin. Code § 28-103.1.

129. Defendants' failure to apply New York City's accessibility standards to elevator permit applications violates NYC Admin. Code § 27-292.5.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs pray that this Court:

(1) Enter a final judgment declaring that Landlord Defendants violated:

      a.     Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3603, and its implementing regulations;

      b.     New York State Human Rights Law, N.Y. Exec. Law § 290, and its implementing regulations; and

      c.     New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, and its implementing regulations.

(2)     Enter a final judgment declaring that Defendants Chandler and the NYC Department of Buildings violated:

      a.     Title II of the Americans With Disability Act, 42 U.S.C. § 23132, and its implementing regulations; and

      b.     New York City Building Code accessibility standards at NYC Admin. Code § 27-292.5.

(3)     Enter final injunctive relief requiring Landlord Defendants immediately to cease and desist from removing any elevators at 1135 Pelham Parkway North from service until reasonable accommodations have been made to provide access to and from all floors of the premises;

(4)     Enter final injunctive relief requiring Landlord Defendants immediately to cease and desist from removing any elevators at 1135 Pelham Parkway North from service until reasonable accommodations have been made to provide access to and from the apartments of Plaintiffs;

(5)     Enter a final judgment awarding the named Plaintiffs actual, compensatory, and nominal damages for injuries and expenses incurred as a result of the preceding violations;

(6)     Allow Plaintiffs reasonable attorney's fees, costs and disbursements pursuant to 29 U.S.C. § 794(a); 42 U.S.C. §§ 1988 and 12133; and CFR § 37.175; and

(7)     Grant such other and further relief as this Court may deem just and proper.


Dated:  Bronx, New York
        September 12, 2014                    Respectfully,


                                             LEGAL SERVICES NYC-BRONX
                                             IAN DAVIE, Esq. (ID 5498)
                                             EDWARD JOSEPHSON, Esq. (EJJ 7815)
                                             349 E. 149th Street, 10th Floor
                                             Bronx, New York 10451
                                             Attorneys for Plaintiffs
                                             (718) 928-2889

                         By:     _____
                                 IAN DAVIE (ID 5498)


                                             LETITIA JAMES
                                             PUBLIC ADVOCATE FOR THE CITY OF NEW YORK
                                             JENNIFER LEVY, Esq. (JL 1681)
                                             1 Centre Street, 15th Floor
                                             New York, New York 10007
                                             Attorney for the Public Advocate
                                             (212) 669-2175

                         By:     _____
                                 JENNIFER LEVY (JL 1681)