UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                              :
PASQUALE PICARO, PRUDENCIO VALLE,        :
JUDITH BRAINICK, SANDY CAUSE,                  :
individually and as next to minor child S.C., and    :          14-CV-7398 (JPO)
LITTIA JAMES, as Public Advocate for the City   :
of New York,                                                         :          OPINION AND ORDER
                                              Plaintiffs,          :
                                                                              :
                      -v-                                                :
                                                                              :
PELHAM 1135 LLC, PELHAM 1130 LLC,          :
MATTHEWS 2160 LLC, JOSHUA                       :
GOLDFARB, PHILIP GOLDFARB, MARC        :
GOLDFARB, THOMAS FRYE, GOLDFARB    :
PROPERTIES, INC., PELICAN                            :
MANAGEMENT INC., NEW YORK CITY          :
DEPARTMENT OF BUILDINGS, and RICK D. :
CHANDLER, as Commissioner of the New York :
City Department of Buildings,                              :
                                              Defendants.      :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      Plaintiffs, Pasquale Picaro and Prudencio Valle,[1] seek a preliminary injunction against Defendants, Pelham 1135 LLC, Joshua Goldfarb, Philip Goldfarb, Marc Goldfarb, Thomas Frye, and certain entities related to or controlled by those individuals (collectively "Defendants"), enjoining them from shutting down the only elevator at 1135 Pelham Parkway North in the Bronx for a period of up to five months. Plaintiffs claim that removing the elevator from service will violate the Americans with Disabilities Act, 42 U.S.C. § 12131; the Fair Housing Amendments Act, 42 U.S.C. § 3604 (f)(2); and the New York State and New York City Human Rights Laws, N.Y Exec. Law § 290; N.Y.C. Admin. Code § 8-101. This Court held a hearing on

---

[1] The other Plaintiffs have not requested preliminary injunctive relief. "Plaintiffs" in this opinion refers only to Picaro and Valle.

1

Thursday, September 18, 2014, at which it heard testimony from Picaro, Theresa Sammarco (who acts with Valle's power-of-attorney), and Philip Goldfarb, and heard the arguments of counsel for the parties. For the reasons that follow, Plaintiff's request for a preliminary injunction is denied.

**I.     Background**

Pasquale Picaro and Prudencio Valle are longtime residents of 1135 Pelham Parkway North ("1135"), a six-story apartment building in the Pelham Gardens neighborhood of the Bronx. Several months ago, they learned that Defendants were planning to repair or replace the sole elevator at 1135. This would shut down the elevator for up to five months. The planned start date of the outage was September 15, 2014.

Both Picaro and Valle have significant health problems. Picaro testified that he has suffered serious injuries in both knees and that he suffers from chronic asthma. Both conditions make it difficult from him to get up and down stairs. Valle suffers from advanced Alzheimer's disease, as well as a host of other health problems. Sammarco testified that Valle has a very difficult time leaving his apartment because his condition causes him to be easily disoriented. Getting up and down the stairs at 1135 would be exceedingly difficult.

Defendants and Plaintiffs have gone back and forth about how to accommodate their disabilities. The parties dispute who offered what to whom. But, based on their representations to the Court at the September 18 hearing, the last best offer from each party is now as follows:

*Defendants' Offer*: Defendants have offered to give Plaintiffs their choice of an apartment on the first floor of 1135 or a larger, more luxuriously appointed apartment in a building less than one mile away. Either apartment would be at no additional cost to Plaintiffs. Picaro—who drives—has been offered a parking spot in the garage of the neighboring building, should he choose that option, free of charge. Defendants will pay for a bonded moving company to

2

transfer Plaintiffs' possessions to the new apartments and to bring them back when the repairs are completed. Defendants have agreed that Plaintiffs will remain in possession of their current units—which are rent-stabilized—for the duration of the repairs and will move back in at the conclusion of the repairs with no change in the rent-stabilized status of their current units.

*Plaintiffs' Request*: Plaintiffs have requested that Picaro and Valle remain in their current units throughout the repairs. They ask that they be reimbursed for the costs of a "para-transit service," as Plaintiffs' counsel has characterized it. Under Plaintiffs' plan, the service would come to Plaintiffs' apartment once per week, carry them down the stairs in a wheelchair or other specialized chair, and carry them back up the stairs after their time outside. The roundtrip service is based on the weight of the carried person and is estimated to cost approximately $525 for a 180-pound person. Along with this service, Plaintiffs ask for a porter to be present in the building who can carry groceries, packages, mail, and the like up and down the stairs for them. They ask that the porter be available for four hours per day. Finally, they ask that Defendants arrange for their mail and packages to be delivered to the superintendent of the building for the porter to retrieve.

## II.     Discussion

Plaintiffs seek a preliminary injunction to stop what they claim is a violation of the ADA, the FHAA, the NYSHRL, and the NYCHRL.

### A.     Preliminary Injunction Standard

To get a preliminary injunction, a movant in the Second Circuit must show "(a) irreparable harm; and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Albert v. Watkins Glen Int'l, Inc.*, 2010 WL 5419041 (W.D.N.Y. Dec. 23, 2010) (citing *Jackson Dairy, Inc. v. H.P.*

*Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979); *Jackson v. Johnson*, 962 F. Supp. 391, 392 (S.D.N.Y. 1997)).

### B. Legal Standard under the ADA, FHAA, NYSHRL, and NYCHRL

Because the standards for discrimination against the disabled are interpreted similarly in the ADA and FHAA, Plaintiffs' federal law claims can be analyzed together. *See Toyota Motor Manuf., Ky. Inc. v. Williams*, 534 U.S. 184, 193–94 (2002); *Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 630 (S.D.N.Y. 2005).

Under federal law, "it shall be unlawful . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap . . . ." 42 U.S.C. § 3604(f)(2).[2] The FHAA and ADA's definition of prohibited discrimination encompasses "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Thus, the law "imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons." *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1418 (9th Cir. 1994); *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1516 (2d Cir. 1995). To make out a claim of discrimination based on failure to reasonably accommodate in the housing context, "a plaintiff must demonstrate that: (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an

---

[2] The Court uses the terms "disability" and "disabled," except when referring to the FHAA's statutory language, which uses "handicap" and "handicapped." *See Helen D. v. DiDario*, 46 F.3d 325, 330 n.8 (3d Cir. 1995) ("The change in nomenclature from 'handicap' [in the Rehabilitation Act] to 'disability' [in the Americans With Disabilities Act] reflects Congress' awareness that individuals with disabilities find the term 'handicapped' objectionable.").

equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *Bentley v. Peace & Quiet Realty 2 LLC*, 367 F. Supp. 2d 341, 345 (E.D.N.Y. 2005). "Ordinarily, the duty to make reasonable accommodations is framed by the nature of the particular handicap." *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 301 (2d Cir. 1998) (citations omitted).

The standard for a reasonable accommodation is higher (from the landlord's perspective) under New York City law. Under New York City Law, an accommodation is reasonable if it "can be made" and "shall not cause undue hardship in the conduct of the [landlord's] business. The [landlord] shall have the burden of proving undue hardship." N.Y.C. Admin. Code § 8–102(18). Of course, what constitutes an undue hardship is measured in relation to the needs of the plaintiff and the specific circumstances of the defendant.

The parties do not dispute that Picaro and Valle are disabled, that Defendants know they are disabled, or that a reasonable accommodation is necessary to provide them fair access to their dwellings. The parties dispute whether Defendants' proposed accommodation is reasonable and whether, under New York City Law, Plaintiffs' proposed accommodation would cause Defendants to suffer an undue hardship. Because their circumstances differ, the Court discusses Valle and Picaro separately, but ultimately comes to the same conclusion as to both: because they cannot show either a likelihood of success on the merits or a sufficient disparity in the hardships that would be imposed by the proposed solutions, their request for a preliminary injunction must be denied.

### C. Picaro

Picaro claims that Defendants' offer does not constitute a reasonable accommodation and insists on his proposed plan. He testified that he does not want to move to an apartment on the first floor because he heard from other tenants that those apartments have had problems with

flooding, mold, and fumes from the building's gas-powered heating system. Because of his asthma, Picaro testified that moving to one of the two available units would make it difficult for him to breathe. He testified that he does not want to move to the neighboring apartment building because he knows everyone who lives in 1135. His neighbors often help him when he has health problems and needs assistance. Picaro also testified that he does not want to move to the other building because he is worried that the movers might damage his belongings and because he is concerned that the scaffolding in front of that building would make it difficult for him to park.

Philip Goldfarb testified that he has never had nor heard of any flooding, mold, or air-quality problems in any of the units in his building. He testified that he had personally inspected both units after they were renovated and that the only smell present was that of fresh paint. Finally, he claimed—both through his testimony and through the representations of his counsel—that he was gravely concerned about the safety of having Picaro carried up and down the stairs on a regular basis.

New York courts have held that offering to move a tenant with mobility issues to a first-floor apartment in the same building constitutes a reasonable accommodation when there is an elevator outage. *Fantauzzi v. New York State Div. of Human Rights*, 979 N.Y.S.2d 55, 56 (App. Div. 1st Dep't 2014). In the *Fantauzzi* case, the Appellate Division held that where the plaintiff had not contended that he would be unable to ingress and egress safely from the first-floor unit, offering him that unit during the duration of an elevator outage was a reasonable accommodation. While reasonableness is case-specific and always dependent on the particular circumstances of each plaintiff's needs, the Court finds that no particular case-specific facts differ between *Fantauzzi* and the instant case. Considering all of the facts at hand, the Court concludes that Defendants' proposed accommodation of Picaro is reasonable within the meaning of federal law.

Under New York City law, though, that does not end the inquiry. In New York City, defendants must show that plaintiffs' proposed accommodation would cause an undue hardship. Philip Goldfarb testified—and his counsel represented—that significant liability attaches to the use of Plaintiffs' proposed para-transit service. New York law "makes it obligatory upon the owner of every multiple dwelling to keep [her] premises in good repair . . . and impose[s] upon the owner a nondelegable duty." *Steiner v. Elsand Properties, Inc.*, 113 N.Y.S.2d 51, 53 (Sup. Ct. Kings Cnty. 1952). Defendants are concerned that—even if Plaintiffs agree to indemnify them—they will be subject to significant liability should an accident occur while Plaintiffs are being carried up or down the stairs. This is a significant hardship that, in view of the reasonableness of the two alternatives available to Picaro, is undue. And while Plaintiffs' counsel represented that the elevator repairs may not be absolutely essential, Philip Goldfarb testified and his counsel represented that the elevator is fifty-four years old and that there is a significant likelihood that it will unpredictably go out of service at some point.

Because Picaro has not shown a likelihood of success on the merits, and because the hardship to him of moving to the first floor of 1135 or to another nearby apartment does not outweigh the hardship to Defendants of the alternative courses of action, his request for a preliminary injunction must be denied.

**D.     Valle**

Valle and Sammarco have been friends for many years and previously dated. As his conditioned worsened, Valle and Sammarco met with a lawyer and arranged for Sammarco to assume power-of-attorney over him and to make decisions on his behalf. She testified about his condition and about the hardships he faces.

Valle's condition makes it difficult for him to leave his apartment and leaves him frequently disoriented. While he can hold a conversation for a few minutes, he often loses his

7

train of thought and begins to talk about something else.  His surroundings, Sammarco testified, are very important to him.  At one point, according to Sammarco, Valle needed some rehabilitative healthcare, and so he was moved to a nursing home for two separate stays of one hundred days each, which is the most that Medicare will reimburse him for.  He did not want to stay at the nursing home because he strongly prefers his own home.  Sammarco testified that Valle is under the care of a 24-hour aide, who monitors him and makes sure he regularly takes medication to abate his symptoms.  Valle cannot be left alone.

Philip Goldfarb testified that he is worried that Valle will be more disoriented by being carried up the stairs than he will be by moving to another apartment in the same building, which apartment will contain all of his personal belongings and will keep him near all of his neighbors.  Goldfarb testified that the apartment he has in mind for Valle has two bedrooms so it can accommodate his live-in healthcare aid.  Sammarco, when asked by Defendants' counsel, testified that she could not predict whether or not being carried up and down the stairs would cause Valle more distress than being temporarily relocated to an apartment on the first floor.  Goldfarb worries that Valle might react negatively to being carried down the stairs and thereby endanger his safety and those of the people carrying him.

The Court is sympathetic to Valle's concerns.  But given the facts of this case, the Court cannot conclude that he has shown a significant likelihood of success on the merits or that he has shown that the balance of hardships tips decidedly in favor of him.  While the Court generally accords deference to the plaintiff's views of his or her own needs in determining what is a reasonable accommodation, having Valle carried up and down the stairs is simply not a viable solution to the problem because it presents too great a hardship to Defendants.  The possibility of injury to Valle and the people who would carry him creates a major hardship to Defendants that, coupled with the cost of the para-transit services, compels the conclusion Plaintiff cannot show a

significant likelihood that he could prevail on his claim and that the balanced hardships do not tip decidedly in his favor.  The Court, therefore, must deny his request for a preliminary injunction.

### III.    Conclusion

Plaintiffs' request for a preliminary injunction is DENIED without prejudice.  This denial is premised on Defendants' following through with the reasonable accommodations in their last best offer.

SO ORDERED.

Dated: September 19, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge